**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
alexis@consumersadvocates.com
KAS L. GALLUCCI (SBN 288709)
kas@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SHERI TARVIN, individually and on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>OLLY PUBLIC BENEFIT CORPORATION,<br><br>          Defendant. | Case No. 2:24-cv-06261-WLH-PD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date:  November 15, 2024<br>Time:  1:30 PM<br>Ctrm:  9B<br>Judge: Wesley L. Hsu |

i

*Tarvin v. Olly Public Benefit Corp.*, No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND FACTUAL BACKGROUND ...............................1

II.  LEGAL STANDARDS ...................................................................3

III. ARGUMENT ..............................................................................4

A.   Plaintiff's Consumer Protection Claims Are Adequately Pled ........................4

B.   Labels With Truthful Information Can Still Be Deceptive and Compliance
     With FDA Regulations Is Not a Shield to Liability .......................................9

C.   The Supplemental Facts Panel Does Not and Can Not Resolve any Issues
     Because the Front Label Communicates Unambiguous and Affirmative
     Misrepresentations
              .............................................................................11

D.   Plaintiff Adequately States a Claim for Breach of Express and Implied
     Warranties ..............................................................................15

E.   Plaintiff Adequately Pleads Both Intentional and Negligent
     Misrepresentation ....................................................................18

F.   Plaintiff's Unjust Enrichment Claim Should Not be Dismissed....................20

IV.  CONCLUSION.............................................................................21

*Tarvin v. Olly Public Benefit Corp.*, No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Aberdeen v. Toyota Motor Sales, U.S.A.*,
   No. CV 08-1690, 2008 WL 11336173 (C.D. Cal. 2007) ....................................20

*Allen v. Similasan Corp.*,
   No. 12CV0376-BTM-WMC, 2013 WL 2120825 (S.D. Cal. May 14, 2013) ........9

*Allred v. Kellogg Co.*,
   No. 17-cv-1354-AJB-BLM, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) ....2, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................3

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ..............................................................2, 20

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ...................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................3

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156 (2018) ................................................... 2, 5, 16

*Brockey v. Moore*,
   107 Cal. App 4th 86 (2003) ........................................................................6

*Brown v. Hain Celestial Grp., Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012)......................................................15

*C.f. Sagan v. Apple Computer, Inc.*,
   874 F. Supp. 1072 (C.D. Cal. 1994).........................................................4

*Tarvin v. Olly Public Benefit Corp.*, No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*Caldwell v. Nordic Nats., Inc.*,
    709 F. Supp. 3d 889 (N.D. Cal. 2024)................................................. 2, 11, 12, 17

*Cimoli v. Alacer Corp.*,
    546 F. Supp. 3d 897 (N.D. Cal. 2021)........................................... passim

*Cisco Systems, Inc. v. STMicroelectronics, Inc.*,
    77 F. Supp. 3d 887 (N.D. Cal. 2014)...................................................19

*Conley v. Gibson*,
    355 U.S. 41 (1957) ...........................................................................3

*Dawson v. Better Booch, LLC*,
    716 F. Supp. 3d 949 (S.D. Cal. 2024) ...................................................7

*DiGiacinto v. RB Health (US), LLC*,
    668 F. Supp. 3d 950 (N.D. Cal. 2023)...............................................2, 6

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .............................................................10

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014)....................................................4

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...........................................................21

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 2008) ................................................................6

*Goodwin v. Walgreens, Co.*,
    No. CV 23-147-DMG (PDx), 2023 WL 4037175 (C.D. Cal. June 14,   2023)...10

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017)........................................ 13, 17

*Ham v. Hain Celestial Grp., Inc.*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014).................................................2, 4

iii

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014).................................................................18

*In re NJOY, Inc. Consumer Class Action Litig.*,
   No. CV 14-00428 MMM (JEMx), 2015 WL 12732461 (C.D. Cal. May 27, 2015)
   ..........................................................................................................................9, 12

*Jones v. Nutiva, Inc.*,
   No. 16-cv-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sept. 22, 2016).............18

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002).........................................................................................9

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (1985).................................................................................15

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003)..............................................................................14

*LeGrand v. Abbot Laboratories*,
   655 F. Supp. 3d 871 (N.D. Cal. 2023).............................................................2, 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008).............................................................................8

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023)..............................................................8, 11, 14

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016).................................................................8

*Nacarino v. KSF Acquisition Corp.*,
   642 F.Supp.3d 1074 (N.D. Cal. 2022).................................................................16

*Pecanha v. Hain Celestial Grp., Inc.*,
   No. 17-CV-04517-EMC, 2018 WL 534299 (N.D. Cal. Jan. 24, 2018)..............17

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015)...............................................................................4

iv

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (Cal. 2004) ...................................................................18

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ...............................................................................3

*Sims v. Campbell Soup Co.*,
    No. EDCV18668PSGSPX, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ........16

*Small v. Fritz Companies, Inc.*,
    30 Cal. 4th 167 (Cal. 2003) ....................................................................18

*Walters v. Vitamin Shoppe Indus., Inc*.,
    701 F. App'x 667 (9th Cir. 2017)..................................................... passim

*Watson v. Solid Gold Pet, LLC,*
    No. CV 18-6479 PSG (SSx), 2019 WL 3308766 (C.D. Cal. Feb. 22, 2019) ......17

*Whiteside v. Kimberly Clark Corp*.,
    108 F.4th 771 (9th Cir. July 17, 2024) ................................. 2, 5, 10, 11

*Williams v. Gerber Prods. Co*.,
    552 F.3d 934 (9th Cir. 2008) ......................................................... passim

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010)...........................................6, 8

**Statutes**

Cal. Comm. Code § 2313(1)................................................................... 15

**Rules**

Fed. R. Civ. P. 8.................................................................................3, 4

Fed. R. Civ. P. 8(e)................................................................................4

Fed R. Civ. P. 12(b)..............................................................................3

Fed R. Civ. P. 12(b)(6).....................................................................3, 20

v

## I.    <u>INTRODUCTION</u>

This is a consumer class action alleging Defendant Olly Public Benefit Corporation's ("Defendant") labeling of its dietary supplements Sleep Extra Strength Melatonin 5 mg, Sleep Ultra Strength Melatonin 10 mg, Sleep Maximum Strength Melatonin 10 mg, Probiotic Extra Strength 6 Billion Probiotics, Probiotic Immune & Digestive Health One Billon Live Cultures - Berry, Probiotic Immune & Digestive Health One Billon Live Cultures - Mango, Multi + Probiotic 1 Billion Probiotics, Daily Extra Strength B12 1000 mcg, and Elderberry Extra Strength 450 mg ("Products") is deceptive. The statements made on the front labels of the Products misrepresent the dosage amount.[1] Reasonable consumers are led to believe that the stated dosage, when viewed in combination with the stated number of units per container, applies on a per unit basis. In reality, each unit does not contain the advertised dosage amount, such that consumers must ingest two or more units to achieve the advertised dosage. As a result, Defendant's conduct harms Plaintiff and similarly situated consumers, as consumers grossly overpay for the Products while receiving only half the advertised value of the Products.

Defendant's Motion to Dismiss ("Mot.") contends Plaintiff's claims fail because reasonable consumers are not likely to be deceived, the Supplemental Facts Panel on the back of the Products shield Defendant from liability, that no warranties existed to be breached, and Plaintiff's other claims for misrepresentation and unjust enrichment fail. Yet, none of Defendant's grounds for dismissal are warranted or persuasive.

---

[1] Plaintiff included color images of Defendant's Products at issue, as well as competitors' products, in her initial filing of the Complaint in Los Angeles Superior Court. As part of Defendant's removal, Defendant filed Plaintiff's Complaint (Dkt. 1-2), yet did not do so in color. Accordingly, attached to the concurrently filed Declaration of Ronald A. Marron as **Exhibit 1** is a true and correct copy of Plaintiff's Complaint.

1

*Tarvin v. Olly Public Benefit Corp.,* No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

There is Ninth Circuit case law on all fours with Plaintiff's Complaint ("Compl.") clearly supporting Plaintiff's position and denying motions to dismiss under virtually identical facts. *See, e.g.*, *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 902-04 (N.D. Cal. 2021); *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) ("*Walters II*"). Furthermore, other district courts in California have previously rejected these arguments and declined to dismiss similar cases. *See, e.g., Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. July 17, 2024); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (2018); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *DiGiacinto v. RB Health (US), LLC*, 668 F. Supp. 3d 950, 966 (N.D. Cal. 2023); *Caldwell v. Nordic Nats., Inc.,* 709 F. Supp. 3d 889, 899 (N.D. Cal. 2024); *Allred v. Kellogg Co.*, No. 17-cv-1354-AJB-BLM, 2018 WL 1158885, at *6 (S.D. Cal. Feb. 23, 2018); *See LeGrand v. Abbot Laboratories*, 655 F. Supp. 3d 871, 895 (N.D. Cal. 2023); *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). This Court should reach a similar conclusion and deny Defendant's Motion in its entirety.

## II.     <u>BACKGROUND</u>

Plaintiff Sheri Tarvin filed a class action complaint against Defendant in Superior Court of California, County of San Diego on June 24, 2-24, which Defendant subsequently removed to this Court on July 24, 2024, alleging violations of California's Consumer Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), and breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation, fraud, and quasi contract/unjust enrichment. *See* Dkt. 1-2.

Plaintiff's Complaint ("Compl.") alleges that Defendant makes, distributes, and markets dietary supplements. Compl. ¶ 1. Defendant deceptively labels those supplement Products by misrepresenting the dosage amount. *Id.,* ¶¶ 2, 13-17. The Products prominently advertise specific dosage amounts in addition to indicating the

2

*Tarvin v. Olly Public Benefit Corp.,* No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

total units per container on the Products front labels. *Id*. Plaintiff alleges that this advertising leads reasonable consumers to believe that each unit of Product contains the advertised dosage amount, when in reality each unit only contains a fraction of the advertised dosage amount. *Id.*, ¶¶ 3, 13-17, 38-39. Consumers are therefore tricked into grossly overpaying for Defendant's Products, receiving only half the advertised value. *Id*.

### III.   **LEGAL STANDARDS**

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give Defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Federal Rule of Civil Procedure 12(b) states that "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). However, Rule 12(b) does provide seven defenses that a party may assert….by motion." *See* Fed. R. Civ. P. 12(b). Among the available defenses under Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a Plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB AJWX, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.f. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted.").

## IV.   ARGUMENT

### A.   Plaintiff's Consumer Protection Claims Are Adequately Pled

Consumer protection statutes in California prohibit false, misleading, or unfair behavior in trade or commerce. The "reasonable consumer" test is applied under each of California's false advertising laws: the UCL, FAL, and the CLRA. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008). A reasonable consumer is "neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014) (internal quotation marks omitted). Ordinarily, "whether a reasonable consumer would be deceived ... [is] a question of fact not amenable to determination on a motion to dismiss." *Ham*, 70 F. Supp. 3d at 1193; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "However, in *rare* situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and

4

*Tarvin v. Olly Public Benefit Corp.*, No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193 (emphasis added). The facts of this case clearly demonstrate that this is not one of the rare situations where dismissal is appropriate.

First and foremost, the Products front labels communicate a specific dosage amount for the supplement to consumers. For example, the front label of Sleep Extra Strength Melatonin clearly represents the quantity of melatonin as "5 mg." Compl., ¶ 13. The front label also represents that the Product contains "50 gummies." *Id.* Notably, there is no qualifier or statement on the front label (e.g. "per serving" or "per two gummies") indicating that a consumer must take multiple gummies to obtain the benefit illuded to by the specified dosages. *Id.* Accordingly, Plaintiff reasonably understood that each gummy would contain the dosage prominently advertised on the label. *See Brady*, 26 Cal. App. 5th at 1172 ("The front of the product makes no attempt to warn the consumer that a one-a-day jar of gummies is in fact full of two-a-day products"); *see also Whiteside*, 108 F.4th at 780 (representations on front label, without any qualifications, were plausibly misleading). Moreover, that consumers must hunt for the appropriate per serving dosage on the back label does not shield Defendant from liability for the misleading nature of the front label (as discussed in section B below). *See, e.g.*, *Cimoli*, 546 F.Supp.3d at 902-04 (rejecting argument that dosage misrepresentations were not likely to deceive reasonable consumers; finding "750 mg" representation on front label of gummy vitamins container actionable under CLRA, notwithstanding product's back-label clarification of dosage as per serving rather than per gummy).

Defendant's Motion repeats the position that if 60 gummies is ambiguous then the consumer can look to the back panel. But that argument misses the mark as the misleading statement is in the dosing, which is not ambiguous, is prominently featured on the front label and contradicts the serving size on the back panel. Without any further information on the front label, a consumer will reasonably

*Tarvin v. Olly Public Benefit Corp.*, No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

conclude that the specified dosage applies per capsule. *See Brady*, 26 Cal. App. 5th at 1172; *see also Walters II*, 701 F.App'x at 670 (reversing dismissal of fraudulent misrepresentation claim where front panel of products included a specific dosage representation without any indication as to whether dosage was per serving or per unit); *Williams,* 552 F.3d at 938 (California's FAL, CLRA, and UCL "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'").

Defendant also argues that Plaintiff must provide more factual support for the allegation that reasonable consumers could be misled than the actual misleading labels of Defendant's deceptive Products themselves, as provided for in the Complaint (Compl., ¶¶ 13-39), and erroneously states that "something more is necessary." Mot. 10:15. Defendant is flat out wrong and ignores well established Ninth Circuit precedent on the factual support necessary to overcome a motion to dismiss upon application of the reasonable consumer test. *See, e.g., Williams*, 552 F.3d at 938 ("[T]he primary evidence in a false advertising case is the false advertising itself") (quoting *Brockey v. Moore*, 107 Cal. App 4th 86, 100 (2003)); *DiGiacinto*, 668 F. Supp. 3d at 966 (denying motion to dismiss and finding that plaintiff adequately alleged that members of the public were likely to be deceived based on the *probability* that front labels of children's medicinal products were misleading to the general consuming public); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (denying motion to dismiss where packaging does not make it *impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived) (internal quotation marks omitted) (emphasis added).

Defendant misunderstands the context of those rare situations where a given court will grant a motion to dismiss as a matter of law. For example, this is not a case where "it [is] not necessary to evaluate additional evidence to determine

whether advertising was deceptive, since the advertising itself made it impossible for plaintiff to prove that a reasonable consumer was likely to be deceived" (such as where product labels explicitly clarify potentially misleading information). *Yumul,* 733 F. Supp. 2d at 1126 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 2008)). Here, there is no clarification or qualifying information on the front of the label dispelling a plausible interpretation that a given specified dosage is the dosage *per gummy* as ordinary, reasonable consumers would expect. Compl., ¶¶ 13-39. Moreover, there are no explicit disclaimers that a consumer must consume more than one gummy to get the specified dose. *Id.*

Defendant's cited cases are not to the contrary. For example, in *Dawson* the court ultimately dismissed plaintiff's allegations by focusing on whether defendant's label was "unambiguously deceptive" (which would prevent defendant from relying on the back label to correct any misleading aspects of the front label) and found that the front label was ambiguous. *Dawson v. Better Booch, LLC*, 716 F. Supp. 3d 949, 958 (S.D. Cal. 2024). Here, Defendant's Products' front labels unambiguously and affirmatively proclaim dosage values. Compl., ¶ 13. Plaintiff unambiguously understood those labels to mean "that each unit of product contained the advertised dosage amount." Compl., ¶ 11. Moreover, courts in the Ninth Circuit have already analyzed claims with *virtually identical* facts and found that defendants were precluded from using back labels as a shield to prevent such allegations from overcoming a motion to dismiss. *See Cimoli*, 546 F.Supp.3d at 902-04; *see also Walters II*, 701 F. App'x at 670.

Next, Defendant argues that Plaintiff has failed to explain why the inclusion of images of competitor labels are relevant. Mot. 10:26-28. Yet, Plaintiff plainly states that "[b]y falsely, misleadingly, and deceptively labeling and advertising the Products, Defendant sought an unfair advantage over its lawfully acting competitors." Compl., ¶ 23. Plaintiff's examples of competitor labels are clearly

relevant to demonstrate appropriate labeling conduct in contrast to the misleading and deceptive nature of Defendant's labeling practices. Moreover, competitor examples further support the notion that ordinary, reasonable consumers rightfully expect that a front label representation of a given dosage amount reflects a per unit value. Therefore, Defendant's argument on this point is hollow.

Finally, Defendant attempts to raise the bar at the pleading stage by incorrectly advancing the theory that a given plaintiff must provide factual support in the form of survey results. Mot. 10:16-23. This is not the pleading standard at this stage of the litigation, and survey results are neither necessary nor sufficient to bolster a given plaintiff's allegations. *See Yumul,* 733 F. Supp. 2d at 1129 (finding that it is more appropriate to allow in extrinsic evidence, such as "survey evidence," *after* the pleading stage); *see also Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 890 (N.D. Cal. 2016) (finding that California courts have expressly rejected the view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation) (internal quotation marks omitted). Defendant's cited cases do not establish the heightened standard that Defendant asserts. To the contrary, the court in *McGinity* explicitly stated that survey results in both *McGinity* and *Becerra* were "not particularly instructive or helpful." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) (highlighting that survey results did not help the court in deciding whether reasonable consumers would likely be misled) (citing *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019)). Moreover, it is foundational that upon considering a motion to dismiss a court should "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

In summary, Plaintiff has adequately pleaded facts to support allegations that ordinary, reasonable consumers were deceived by Defendant's blatantly and unambiguously deceptive labels. Therefore, this Court should deny Defendant's motion to dismiss, particularly in light of factually identical precedent finding the same. *See, e.g., Cimoli*, 546 F. Supp. 3d at 902–04; *Walters II*, 701 F. App'x 667, 670.

## B.   Labels With Truthful Information Can Still Be Deceptive and Compliance With FDA Regulations Is Not a Shield to Liability

Defendant takes two positions that misunderstand the applicable standard under the reasonable consumer test. First, Defendant argues that because the Principal Display Panel of Defendant's products "accurately states the quantity of gummies in the package" and "accurately states each *serving's* dosage" that reasonable consumers cannot be misled. Mot. 11:19-23 (emphasis added). However, California's false advertising statutes are not so restrictive as to prohibit only advertising which is expressly stated and literally false. As the California Supreme Court makes clear, "[t]he advertising need not be actually false, as long as it is misleading or 'has a capacity, likelihood or tendency to deceive or confuse the public.'" *Allen v. Similasan Corp.*, No. 12CV0376-BTM-WMC, 2013 WL 2120825, at *5 (S.D. Cal. May 14, 2013) (quoting *Williams*, 552 F.3d at 938 and quoting *Kasky v. Nike, Inc.*, 27 Cal.4th, 939, 951 (2002)). Moreover, California courts have held that implied representations which have a misleading effect are actionable. *See, e.g., In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (JEMx), 2015 WL 12732461, at *12-13 (C.D. Cal. May 27, 2015) (holding that "a reasonable consumer could conclude" that an "advertisement conveys an implied misrepresentation"). Therefore, the Products do not need to state, for example, "Each gummy contains 5mg" to plausibly deceive consumers. Courts recognize that implied representations can have the same deceptive force as explicit

9

representations. *See Kasky*, 27 Cal. 4th at 951. Defendant claims that: "[n]othing on the label says or implies that this dosage applies to each gummy." Mot. 12:13. This is Defendant's interpretation. But, as the only information on the front label regarding dosage is that the product contains X amount of supplement and the product contains X amount of gummies, without any further clarificatory information on the front label, it is not only reasonable but more than likely that a consumer believe the specified dosage applies *per* gummy. *See Walters II*, 701 F.App'x at 670 (reversing dismissal of fraudulent misrepresentation claim where front panel of products included a specific dosage representation without any indication as to whether dosage was per serving or per unit).

Defendant next argues that FDA compliance somehow serves as a shield to liability. *See* Mot. 12:14-22. But Defendant ignores long standing binding precedent to the contrary. *See Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."); *see also Goodwin v. Walgreens, Co.*, No. CV 23-147-DMG (PDx), 2023 WL 4037175 (C.D. Cal. June 14, 2023) ("even technically correct labels can still be legally cognizable as "misleading"). Here, Defendant's minimal compliance with FDA regulations should not serve to diminish the safeguards of consumer protection statutes as has been pointedly expressed within the Ninth Circuit: "[Defendant] makes no argument as to how compliance with certain FDA regulations would automatically shield it from liability under these California statutes or tort claims." *Williams*, 552 F.3d at 940.

Defendant's reliance on *Ebner* is not instructive. *See* Mot. at 12:23 - 13:24. There, the court held that there was an "absence of any statement or other depictions anywhere on the package about [the alleged issue]." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016). Recently, the Ninth Circuit made clear that its ruling in

*Ebner* was not that the plaintiff failed to prove that the label's representations were deceptive, but that the label made *no representation at all*." *See Whiteside*, 108 F.4th at 780 (italics in original). By contrast, here, the dosage misrepresentations are plainly stated on the Products' front labels and these representations are *contradicted* by additional information on the back of the Products. Because the Products' front labels are affirmatively misleading, Defendant's Motion should be denied.

**C.    The Supplemental Facts Panel Does Not and Can Not Resolve any Issues Because the Front Label Communicates Unambiguous and Affirmative Misrepresentations**

Defendant argues that the Principal Display Panels of Defendant's Products may "require more information," and is thus ambiguous. Mot. 14:15. But the label is not ambiguous instigating a consumer to review the back label. Instead, and analogous to *Whiteside,* the front of the label is misleading on its face because it appears clear that one gummy provides the noted dosage.  *Whiteside*, 108 F.4th at 778 ("if a product's front label is plausibly misleading to reasonable consumers, then the court does not consider the back label at the pleadings stage. Whether the back label ultimately defeats the plaintiff's claims is a question left to the *fact-finder*.") (emphasis added). Defendant ignores the holding in *Whiteside*, where Plaintiff plausibly alleged that a reasonable consumer could interpret the front label as unambiguously deceptive such that defendant there was precluded from relying on the back-label. *See id*. at 782. Here, the Products' front labels simply and clearly convey a specific dosage, are not ambiguous, and thus similarly preclude Defendant from relying on the back label of its Products for clarification. Plaintiff's position is in harmony with *Whiteside*. *See id.*

Defendant's reliance on *McGinity* is also misplaced. As discussed above, the Products' front labels are affirmatively misleading and do "not include the sort of inherent ambiguity which might put a consumer on notice to investigate the meaning

of the label further." *See Caldwell,* 709 F. Supp. 3d at 899. In *McGinity*, the term "Nature Fusion" presented inherent ambiguity because the term "Fusion" indicates a mix of products but does not specify that mix—putting the consumer on notice that the product might include both natural and synthetic ingredients with an unspecified portion of each. 69 F.4th at 1095-99; *see also Whiteside*, 108 F.4th at 780 (finding "Nature Fusion" so devoid of any concrete meaning that there was nothing "from which any inference could be drawn or on which any reasonable belief could be based about") (italics in original). Dissimilarly here, Defendant's Products boast specific dosage benefits that are not inherently ambiguous. Compl., ¶¶ 13-23. Moreover, additional information that could be found on the back label is not a mere clarification — it is contradictory — because where a reasonable consumer expects a per gummy benefit due to the stated specific dosages on the front label any investigation of the back label would contradict that notion by stating that multiple gummies are required to achieve the expected benefit. Compl., ¶¶ 13-23. Because the Products' front label dosage representations are not inherently ambiguous, "a reasonable consumer would not have been on notice to investigate the meaning of the front label further—even by reviewing the back label of the product at issue; this alone ends the inquiry and distinguishes the case from *McGinity*." *Caldwell*, 2024 WL 24325 at *6.

Next, Defendant rehashes the same flawed argument that Defendant's Products "do not make any affirmative promises about how many gummies are required to reach the advertised dosages," Mot. 16:5-6, yet (as already addressed) implied promises carry the same weight as affirmative promises and carry the same potential for deception. *See In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *12. Moreover, Defendant recognizes that the presence of ambiguity rests upon the assessment of whether a "consumer is left wondering." Mot. 16:8-9. Here, Plaintiff was not left wondering about whether the specified

*Tarvin v. Olly Public Benefit Corp.,* No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

dosages listed on Defendant's Products were stating a per gummy serving amount: "Plaintiff saw the misrepresentations made on the Product labels prior to and at the time of purchase and understood them as representations and warranties that *each unit* of the product contained the advertised dosage amount." Compl., ¶¶ 11-12, 24-37 (emphasis added). Plaintiff was not "left wondering." Plaintiff purchased Defendant's Products reasonably expecting that the dosage listed on the front labels meant "each unit." *Id.*

Defendant also confuses what the FDA requires as necessary information on the Supplemental Facts Panel, with whether the Principal Display Panel is misleading. *See* Mot. 16:18-18:8. But mere minimal compliance with FDA guidelines does not foreclose the possibility that a given label, or omission of a statement necessary to mitigate the deceptive nature of a label, will mislead reasonable consumers. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1070 (N.D. Cal. 2017). Defendant's argument that the FDA, in 2014, "received no comments recommending that the serving size or serving per container information on the Supplement Facts Panel…be made more prominent or noticeable" does not bolster Defendant's position as the issue here is the dosage representation. Mot. 17:9-12. Defendant focuses its attention on the number of gummies shown at the bottom of the Products and the number of recommended servings on the back. But this misses the mark as the claimed deception has to do with the dosage and omission of qualifying information with respect to how many gummies are necessary to attain that dosage.

Even Defendant admits that the "inclusion of the total dosage on the Principal Display Panel is helpful for consumers because it facilitates comparison between products." Mot. 16, n. 8. But consumers want to compare more than just Defendant's Products, they compare the products of competitors whose labeling is truthful. Compare Compl. ¶ 13 (picture of Defendant's Sleep Extra Strength

Melatonin 5 mg) to ¶ 20 (picture of Nature Made Melatonin 5 mg). If a consumer was comparing the two products, the reasonable consumer would believe both products had 5mg of melatonin per gummy. But this is only true for the Nature Made product. Similarly, the GNC brand makes it clear that 2 gummies are necessary to attain the 5mg melatonin. Compl. ¶ 21 (picture of GNC Melatonin 5 mg). Yet, if a reasonable consumer was comparing these products on a shelf, it would appear from the front package of Defendant's Product that it was the better choice as it does not say 2 gummies are needed to attain the 5mg dosage of melatonin desired. Same with Nature's Bounty which clearly shows that 10gm of melatonin is provided with 2 gummies. Compl. ¶ 22 (picture of Nature's Bounty Sleep3 Gummies Melatonin 10 mg). Because of the deception, a consumer cannot compare products and make an informed decision on a purchase. This creates an unfair advantage to Defendant and causes consumers to purchase products only based on that deception.

Finally, with Defendant's back against the wall in the face of Ninth Circuit precedent directly on point both factually and principally, Defendant fancifully argues that the standard presented is "outdated." Mot. 19:10-11. Defendant calls out *Walters II* and *Cimolli* because *both* are on all fours with the case at bar. *See Cimoli*, 546 F.Supp.3d at 902-04; *see also Walters II,* 701 F. App'x at 670. Additionally, Defendant cites to *McGinty* and claims that the reasonable consumer standard has been altered such that some imaginative previous standard, a supposedly "far lower standard," has been rejected. Mot. 19:21-22. Defendant pulls this notion out of thin air. First, the language Defendant cites as somehow altering the reasonable consumer standard was originally proffered in *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 508 (2003). Both *Walters II* and *Cimolli* were decided over a *decade* after *Lavie*. Moreover, *nowhere* in the *McGinity* decision are either *Walters II* or *Cimolli* even mentioned — let alone rejected — to the contrary the court is explicit that the

14

"touchstone" of the reasonable consumer standard is whether the product labels "have a meaningful capacity to deceive consumers." *See McGinity*, 69 F.4th 1097-1100. Therefore, Defendant's theory is both unavailing and contrary to the *Mcginity* court's rationale. *See id.* Accordingly, Defendant's Motion must be denied.

### D.    Plaintiff Adequately States a Claim for Breach of Express and Implied Warranties

To successfully plead a breach of express warranty claim under California law, a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *See* Cal. Comm. Code § 2313(1); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899-900 (N.D. Cal. 2012). In deciding whether a statement or affirmation made by a seller constitutes an express warranty under Cal. Comm. Code § 2313, the Court must decide whether the seller's statement constitutes an affirmation of fact or promise or description of the goods, or whether it is instead "merely the seller's opinion or commendation of the goods . . . ." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985) (internal quotation marks omitted).

Here, Plaintiff alleges: (1) the dosage descriptions are affirmations of fact that the Products contain a particular dosage of a given dietary supplement per gummy, (2) the affirmations of fact became part of the basis of the bargain when Plaintiff relied on the representations; and (3) the misleading nature of the representations made for a breach of warranty by which the Plaintiff was injured. Compl., ¶¶ 11, 25, 90-103. Defendant argues that dosage information "does not make an affirmative promise." Mot. 21:21. However, the Complaint alleges that the Products' front labels represent a specific dosage. Compl., ¶ 11. These allegations are sufficient at the pleadings stage. *See, e.g., Allred*, 2018 WL 1158885, at *6 ("While Kellogg continues to argue the labeling of its product contains a factually true statement [],

the statement can be misleading based on the assumption of the reader. Whether the label actually provided a warranty and is likely to deceive a consumer are not appropriate questions to decide on a dismissal motion."); *Sims v. Campbell Soup Co.*, No. EDCV18668PSGSPX, 2018 WL 7568640, at *9 (C.D. Cal. Sept. 24, 2018) ("Plaintiff has pointed to statements on the V8 Splash labels that she alleges created an express warranty. Whether or not they actually did depend on how they would be interpreted by consumers. The Court concludes that this is a factual question that cannot be determined on a motion to dismiss.").

Defendant cites to *Nacarino* for the position that the promise on the front label is not an "unequivocal statement" and therefore not an affirmative promise. *See* Mot. 21:23-24 (citing *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1086 (N.D. Cal. 2022)). However, the facts here align with *Brady* where the court held that "plaintiff sufficiently pled his express warranty claim "where the front of the label impliedly warrants enough gummies to last 100 days, but the back whittles that figure down to 50," and that "[w]e don't think that the microscopic 'Chew: Two Gummies daily' and 'Serving Size: 2 gummies' on the back is sufficiently conspicuous to modify the implied warranty on the front." *See Brady*, 26 Cal.App.5th at 1178. As previously discussed, Defendant's Products specify a particular dosage along with a specified quantity. Compl., ¶ 13. All of the Products' labels unequivocally state a fact regarding the amount of milligrams of the supplement. Taken together these representations are an explicit and unambiguous statement that each gummy contains a particular dosage of a given dietary supplement.

*Cimoli* is also not in tension with Plaintiff's position. *Cimoli* held that "[n]owhere in the Complaint is it alleged that the Vitamin C Gummies do not in fact contain 750 mg of Vitamin C *per serving*." *Cimoli*, 546 F. Supp. 3d at 905 (emphasis added). But here, Plaintiff alleges "that each *unit* does not contain the advertised

16

dosage amount. Instead, each gummy or softgel unit contains only a fraction of the advertised dosage and consumers must ingest two or more gummies or softgels to achieve the advertised dosage." Compl., ¶ 3 (emphasis added). The distinction between "per serving" and "per unit" is critical because the affirmation or promise deceives the average, reasonable consumer into believing that each gummy (unit) provides a specified amount of the dietary supplement. Moreover, to the extent that Defendant puts forth its own interpretation of its Products representations, whether those representations constitute an affirmation of fact is premature at this stage. *Pecanha v. Hain Celestial Grp., Inc.*, No. 17-CV-04517-EMC, 2018 WL 534299, at *8 (N.D. Cal. Jan. 24, 2018) ("Consistent with the [reasonable consumer standard], whether there was a breach of the warranty —i.e., that the deodorant products are [in accordance with the representations on the package]—is a question of fact that cannot be resolved at the 12(b)(6) phase."); *Watson v. Solid Gold Pet, LLC,* No. CV 18-6479 PSG (SSx), 2019 WL 3308766, at *5 (C.D. Cal. Feb. 22, 2019) ("the Court finds that whether Defendant has breached its express warranty is a question of fact that is to be determined through this suit.").

Finally, earlier this year, Judge Edward M. Chen in the Northern District of California in *Caldwell v. Nordic Naturals, Inc*. addressed the breach of warranty claims in *Nacarino* and *Cimoli*, finding promises were not kept in the representations presented in those cases and found the specific warranties were in fact breached. *Caldwell,* 709 F. Supp. 3d at 899 ("To this end, whether a plaintiff was promised 750 mg of Vitamin C per gummy, but received half that amount per gummy or whether a plaintiff was promised that the product contained low sugar but received a product with a high amount of sugar—in both instances a promise would have been made that was not kept.")  In fact, Judge Chen in *Cardwell* found specific dosage claims – as in *Cimoli* – more amenable to evidence of breach.  *Id*.

*Tarvin v. Olly Public Benefit Corp.,* No. 2:24-cv-06261-WLH-PD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

Because Plaintiff has sufficiently pleaded her express warranty claim, so too has she properly pleaded her implied warranty claim. *See Hadley*, 273 F.Supp.3d at 1070 ("When an implied warranty of merchantability cause of action is based solely on whether the product in dispute '[c]onforms to the promises or affirmations of fact' on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product") (quoting *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014)); *Jones v. Nutiva, Inc.*, No. 16-cv-00711-HSG, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016) (holding that plaintiff adequately plead his claim for breach of implied warranty based on the product's failure to conform to the promises or affirmations of fact on the label when he sufficiently alleged that a reasonable consumer would be deceived by the representation). Accordingly, the court should reject Defendant's position on this issue.

### E.    Plaintiff Adequately Pleads Both Intentional and Negligent Misrepresentation

To state a claim for intentional misrepresentation under California law, Plaintiff must establish: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (Cal. 2004). Negligent misrepresentation differs in that it "does not require scienter or intent to defraud." *See Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173–74 (Cal. 2003) (quotation omitted). Instead, Plaintiff must establish that Defendant made the misrepresentation without "reasonable ground for believing it to be true." *Id.* at 174 (quoting Cal. Civ. Code §§ 1710(2), 1572(2)).

Here, Plaintiff alleges that Defendant's Products (1) falsely represented a per unit benefit and misled ordinary, reasonable consumers regarding such benefit

(Compl., ¶¶ 2-3, 16), (2) Defendant knew such representations were false (Compl., ¶¶ 3, 14, 37), Defendant intended to defraud in order to turn a larger profit (Compl., ¶¶ 14, 19-20, 37), that Plaintiff relied on those deceptive representations (Compl., ¶¶ 25-27), and that Plaintiff was damaged by paying a premium for the products (Compl., ¶¶ 32-36). Accordingly, Plaintiff adequately pleads misrepresentation.

Defendant argues first that there is no "express (and untrue) promise" that satisfies the requirement for a false representation. While it is true that a fraudulent representation must be false, here the Defendant's labels do make a false representation: that one can derive a specified amount of benefit from a single unit of a gummy when in reality the consumer must eat at least two gummies. The math here is simple — there is no ambiguity — reasonable consumers would believe that the stated dosage means "If I eat one gummy, then I will obtain x milligrams of supplement as a benefit." *See LeGrand*, 655 F. Supp. 3d at 895 (finding plaintiffs fraud claims plausible because products labels "*implied* the product is beneficial rather than detrimental to her health") (emphasis added).

Next, Defendant argues that the "complaint is devoid of any facts that evidence intent to induce reliance." Mot. 23:6-7. This is false. At the outset, Plaintiff notes that the analysis centers on whether "the Complaint plausibly states facts from which an intent to defraud can be *inferred*." *LeGrand*, 655 F. Supp. 3d at 896 (emphasis added). Plaintiff alleges that Defendant intended to defraud by gaining an unfair advantage over competitors as evidenced by comparison with appropriate industry wide practices regarding similar products within the same exact market (Compl., ¶¶ 20-23, 116), and a motive to earn a premium profit or attempting to capture more purchases in general (Compl., ¶¶ 19, 26, 31-32, 116). These allegations adequately show an intent to deceive, and Defendant's Motion should be denied. *See Cisco Systems, Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 898 (N.D. Cal. 2014) (denying motion to dismiss intentional misrepresentation claim where

19

plaintiff pleaded "sufficient facts from which it can be inferred that defendant either knew or should have known that the information provided was false or incomplete.").

Defendant rehashes the same argument in its rejection of Plaintiff's negligent misrepresentation claims, namely that "there is no fact misrepresented." Mot. 23:28-24:1. However, as discussed above there is a fact misrepresented, so Plaintiff's claims should similarly hold upon defiance of Defendant's objections.

### F.    Plaintiff's Unjust Enrichment Claim Should Not be Dismissed

Defendant argues that "unjust enrichment [], is not a standalone cause of action under California law." Mot. 24:9-10.  However, Plaintiff does not pursue unjust enrichment as a separate cause of action. Instead, Plaintiff pleads a cause of action for "Quasi-Contract/Unjust Enrichment." Compl., ¶ 122. "Quasi-contract can serve as the basis for the equitable remedy of restitution where one party obtains a benefit which he may not justly retain." *See Aberdeen v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690, 2008 WL 11336173, at \*9 (C.D. Cal. 2007); *see also Astiana*, 783 F.3d at 762 ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'").

Defendant argues that "[i]n any event, Plaintiff has failed to plead that she lacks an adequate remedy at law, so she is not entitled to an equitable remedy." Mot. 25:2-3. This is false, Plaintiff has alleged that Defendant enticed Plaintiff and other ordinary, reasonable consumers into paying a premium for Defendant's deceptively labeled products. Compl., ¶¶ 26-31. These allegations are sufficient to state a quasi-contract cause of action. *See Astiana*, 783 F.3d at 762 (allegations that defendant "had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result" were "sufficient to state a quasi-contract cause of action."). Therefore, Defendant's theory here is misplaced and Plaintiff's claim should stand.

20

## V.    <u>CONCLUSION</u>

Defendant's Motion fails to provide support for dismissal on a motion under Rule 12(b)(6). Plaintiff therefore respectfully requests that the Court deny Defendant's Motion in its entirety.  If the Court dismisses any portion of the Complaint, Plaintiff respectfully requests leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003).

Date: October 25, 2024                    Respectfully Submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF RONALD A.
 MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
alexis@consumersadvocates.com
KAS L. GALLUCCI (SBN 288709)
kas@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed
Class***

21

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Olly Public Benefit Corporation, certifies that this brief contains 6,606 words, which complies with the word limit of L.R. 11-6.

Date: October 25, 2024

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF RONALD A.
 MARRON,**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
alexis@consumersadvocates.com
KAS L. GALLUCCI (SBN 288709)
kas@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed
Class***
